Ewing, C. J.
In this action of ejectment, a writ of habere facias possessionem having been executed, the defendant complains that the lessors of the plaintiff have taken possession of more lands than they have title to and recovered, and seeks the interposition of this court, from which the writ issued.
The first inquiry to be made, is whether assuming the allegation to be true, the court can afford the defendant relief.
Upon this head, the law is I think fully and clearly settled. It is laid down distinctly, and with precision, by Lord Mansfield, in Cottingham v. King, 1 Burr 629. “ In this fictitious action, the plaintiff,” says he, “is to show the sheriff and is to take possession, at his peril, of only what he has title to. If he takes more than he has recovered and shown title to, the court will in a summary way set-it right.” This power has been repeatedly recognized and exercised in the English and American courts. In this court, in the case of John Den against William Lloyd and William Lloyd, junior, in September term, 1826, the sheriff having delivered to the lessors of the plaintiff a strip or gore of land belonging to one of the defendants, adjoining the premises contained in the mortgage which formed the title of the plaintiff, but not included therein, and the matter having been made satisfactorily to appear to the court by affidavits taken under a rule to show cause, the rule was made absolute and restitution ordered. The exercise of this ¡Dower, in a summary way, seems indispensable to the due *administration of justice so long as the lessor of the plaintiff in ejectment is permitted to describe the premises *319 claimed, in the most general terms and without specification in the declaration and execution, and while the sheriff is to deliver possession under the direction of the lessor. If his error or waywardness in taking possession, can only be remedied by a new action of ejectment, it is easy to foresee, without the aid of fancy, the most grievous oppression and mischief. Nor is the power of relief limited, as insisted on this occasion by the plaintiff’s counsel, to casos where the recovery is against one person, and another is put out of possession, or where part only, as one-half or one-third is recovered, and possession of the whole is given. These, in the cases cited, are instances of the exercise, not of the extent, of the power, which is, as it ought to be, as comprehensive as the injury. The manner in which the power is to be exercised, or the preliminary steps to be taken and adjusted preparatory to its exercise, will be the subject of some remarks in the sequel.
The power of the court being established, the next inquiry seeking whether it should be brought to operate between the present parties, is what premises have the lessors of the plaintiff shown title to and recovered.
From the affidavits and documents before us, it appears that the title of the lessors of the plaintiff is a deed made to them by the sheriff of the county of Sussex, under a sale by virtue of an execution from the Court of Chancery, upon a decree for the sale of certain premises mortgaged by the defendant to the lessors of the plaintiff In the deed, and execution and mortgage, the premises are thus described : (I take the description from the extracts entered on the copy delivered to me of the map marked exhibit E; the deed, execution and mortgage, or copies, not having been furnished to us). .Beginning at a chestnut tree, and running several specified courses and distances to a heap of stones designated on the map by the letter B ; thence N. 25 deg. 30 min. W. fifty-two chains and twenty-five links to a heap of stones designated on the map by the letter A; thence N. 65 *320 ■deg. E. twenty-two chains and fifty links to a heap of stones and stump designated on the map by the letter Gr; and thence two given courses and distances to the place of beginning, Containing one hundred and eighty-six acres and a quarter, and nine perches, strict measure. The description in these writings does not specify the dwelling house of the defendant Johnson; at least I presume so, as it was not suggested by either, party on argument that it is specifically mentioned.
The true location of the line from B to A is the subject of controversy between the parties, and its adjustment will show the extent of the title and recovery of the lessors of the plaintiff. If its true location is, as claimed by the defendant, the lessors of the plaintiff have taken possession of land not covered by their title and not included in their recovery. By saying that the true location of the line is the criterion whereby the dispute is to be decided, I mean to exclude the idea that the declarations said to have been made by the defendant when negociating for the loan of the money and which may have induced a belief that the dwelling house was included in the mortgage, can have any other legal effect than their tendency, among other considerations, to settle a doubtful or disputed line. How far fraud, or false representation, on the part of Johnson, might aid the mortgagees, in a court of equity, we are not to inquire. In a court of law, if the dwelling house is not included within the bounds of the mortgage, correctly .adjusted, although the parties may have intended to include it, or the mortgagees may have believed, from the false and fraudulent assertions of the mortgagor, that it was done, we must, notwithstanding, measure the title and recovery of the mortgagees by the actual limits and description of the instrument; or rather, in the present case, we are to bound the plaintiff by the language of the sheriff’s deed.
In the description of the premises, as just now seen, a heap of stones is called for as a monument at the corner A. *321 On the ground, this heap of stones is not to be found, nor is any other monument there to fix with certainty the true position of that corner. And hence much of the present difficulty between these parties has resulted.
In endeavoring to ascertain the true location of the line B A, which, as already remarked, is to show what the lessors of the plaintiff have title to, and thus to learn whether the defendant has any cause of complaint. I think it expedient for the present *to lay aside the running of the surveyors of both parties. They sought their end, no doubt, with great skill and science, but not in the most simple and certain manner, as I hope I shall demonstrate. In the first place; the surveyor of the plaintiff, fo ascertain the true B A, started from the corner B. “ He did not run as stated in exhibit K,” which is an extract from the mortgage, but on a course which bore N. 24 degrees and a quarter west. From B he could see Johnson’s house and a school house, which stands at or near the corner A; and the line he ran on that course “passed Johnson’s house between the two chimneys of the large house on the west end of the house,” thereby leaving it, or the chief part of it, and the kitchen, within the mortgage, and teiminated directly in front of the school house door. Why did he run that line on that course? He explains ; “ The reason he did not take the course mentioned in exhibit K, in running the line B A, was because there was some person present who said the corner at the school house was directly in front of the school house door, and that there was a stake there which he could find;” which induced him to run on the course twenty-four and a quarter west. “ He could not however find any stake;” and may we not suppose he assumed 24 1-4 west because he found by observation that would strike the school house door? Moreover, the surveyor says the contents of the premises, according to his survey, are more than the mortgage calls for. In the second place; the surveyor of the defendant; He began at B, and making an allowance for vari *322 ation, started on a course H. 25 deg. W. On his route he soon discovered an attraction by which his course bore ne.ar 26 deg. W. Stopping at D, nearly midway, he corrected his course by a monument said to show, at a short distance, the corner of an adjoining lot. Having run out this corrected course, he ran the line G- A, and again made an allowance for the correction of the course B A, which he believes, truly fixed to be about H. 25 deg. 30 min. W. and to strike the kitchen attached to the dwelling house so as to exclude the latter and a large portion of the former from the mortgage. How the variation and attraction and corrections, which are all here brought into account, serve to introduce complexity, and hence more or less of uncertainty, in this mode of ascertaining the location of the line. Moreover, the surveyor *extends his distance on B A twelve links beyond the distance mentioned in the mortgage and sheriff’s deed, without any fixed landmark, or natural boundary to justify the extension, and with a view, as I presume, to reach the line G A as run by him on the course he supposed to be correct.
And here I stop a moment to compare the observations of the two surveyors. A course H. 25f- W. from the corner B, according to the defendant’s surveyor, strikes the kitchen which lies easterly of the dwelling house. According to the observation of the plaintiff’s surveyor, a course H. 24J W., which indicates a more easterly line than the former, passed between the two chimneys on the west end of the house. A more easterly line striking a more westerly object.
I do not think much effect can justly be given, as was insisted by the defendant’s counsel, to the ascertainment of the line between the Mitchell lot and the Tunison farm. And for this reason. Johnson, when he made the mortgage, was the .owner of both; and hence if the true line B A varies from that line and includes part of the Mitchell lot, the true line must be the guide.
*323 Is is not my purpose here to inquire, which of the lines pointed out by these surveyors, or whether either of them, is correct. There appears to me a more simple and certain mode than has been pursued by either, of ascertaining the true location of this line.
The corners B and G are fixed, known and uncontroverted. The distance of the lines B A and G A are given in the writings and are not disputed. Now if an arc of a circle be drawn from the point G as a centre with the distance G A as a radius, and another arc be drawn from the point B as a centre with the distance B A as á radius, their intersection will show confidently the corner A. In other words, the point where two lines of the distances B A and G A will meet or strike each other, is the true corner A. From which a line run, on whatever course it may be, to the corner B, will form the true line of the mortgage and show the extent of the title and recovery of the lessors of the plaintiff.
In this mode, either of the surveyors, or any other experienced craftsman, will, I think, most satisfactorily point out the premises recovered.
*The next inquiry is, whether the lessors of the plaintiff have taken possession of lands not included within their line truly ascertained. Will the court, according to the course of practice, undertake and decide this inquiry ? Where the fact, that the plaintiff in ejectment takes possession of more than he has recovered or shown title to, is made out clearly and conclusively by the evidence produced before the court, as in the cases of Roe v. Dawson, 3 Wils. 49, and Den v. Lloyd and Lloyd, (a) the court ought at once to set the matter right and afford relief, without opening the way to further controversy, litigation or expense. But where the case is not clearly made out and results in what is denominated a boundary dispute, involving a variety of facts proper to bo examined and settled by a jury, the court may, if they see just ground to suppose the allegation *324 of the defendant to be true, direct a feigned issue to settle the question. In Connor v. West, 5 Burr. 2673, Lord Mansfield said he remembered an issue directed to try whether the sheriff had delivered possession properly according to the recovery. In Jackson v. Hasbrouck, 5 John. 366, the court said, a feigned issue seems to be the course of proceeding, in the English courts, when the fact is doubtful whether the lessor has taken possession of more land than he has recovered or not.
Under these views of the case, what ought now to be done by this court'on the present application? There is some ground, in my opinion, to believe, even from the showing of the surveyor of the plaintiff’s lessors, that they have taken possession of more than is strictly included within their title; but of how much, or where the line B A, truly located, will run, I think is not discernible from the materials before us. And if, therefore, a more simple mode of_ doing justice to the parties cannot be adopted, the direction of a feigned issue may become necessary. The delay and expense incidental to that mode of procedure admonish us that a more direct mode, if in our power, is to be preferred. In any case where a restitution is ordered, some instructions, more or less precise, must be given to the sheriff, and he may oftentimes require professional aid to carry them into effect. In the present case, I think a rule may properly be made requiring the sheriff to restore to the defendant whatever the lessors of the plaintiff have taken possession of, if *any, westwardly of the line B A, truly located and found in the manner and upon the principles which I have stated.
RULE.
“ The court having heard the affidavits and proofs taken and made in this case, and the arguments of counsel thereupon, and duly considered the same, do order that the sheriff of the county of Warren do cause the said John A. Johnson to be restored to the possession of all the lands, if any, *325 whereof possession has been delivered to the lessors of the plaintiff by virtue of the writ of habere facias possessionem, issued in the aforesaid cause, lying westwardly of a line running from a corner of the farm, or tract of land mentioned in the mortgage from the defendant to the lessors of the plaintiff, and the deed from the sheriff of the county of Sussex to them, under which they claimed title in the aforesaid cause, at a heap of stones in the woods, corner to John Schenck in Adam Fisher’s line, being the south-west corner of the said farm or tract, and being marked B on the map, (exhibit E in this case) to a corner (at or near the school house) distant fifty-two chains and twenty-five links from the said corner B, and distant twenty-two chains and fifty links from another corner of the tract in question, on the road from the said school house to Hacketstown, and marked G- on the said map; and if is further ordered that this order for restoration being made according to the evidence now produced before the court, is not to conclude, or in any way prejudice, either party in any future action of ejectment, or in any lawful investigation of their respective rights in regard to the premises in question in the above stated action of ejectment, or the lines and boundaries thereof. And it is ordered that the lessors of the plaintiff show cause, on the first day of the next term, why they should not pay to the defendant the costs of this application.”
Note (a) — The reporter was furnished by Mr. Saxton with the following report of the case of Den v. Lloyd, above referred to.
Den ex dem G. S. Woodhull and others vs. W. Lloyd and W. Lloyd, Jr.
The ejectment was returned and rules exchanged in May term 1825. In October, 1825, the plea was relinquished by the order of W. Lloyd, judgment entered and habere facias executed. *In May term, 1826, Mr. B. Stockton, on behalf of W. Lloyd, Jr., obtained a rule, “ That the plaintiff shew cause on the first day of the next *326 term, why the execution of the writ of possession in this cause should not be set aside, so far as respected a- lot of six and a half acres of land, claimed by William Lloyd, Jr., not included in the plaintiff’s title, and possession of the said lot restored to W. Lloyd, Jr.”
Upon the argument of the cause in September term, 1826, Mr. R. Stockton for W. Lloyd, Jr., produced the following affidavits in support of the rule, from which it appeared, by the affidavit (1) of W. Lloyd, “ That he for bsoth defendants instructed the attorney to let judgment pass; that he only expected a judgment against the farm, not against the lot, as he knew the plaintiff had mo title to it; that he had no authority from W. Lloyd, Jr., who then lived in Hew York,” (2) of J. J. Ely, esq., the sheriff, “That by virtue of the habere facias, he, on the 26th April last, delivered to the lessors of the plaintiff, possession of all the lands then in possession of W. Lloyd, in the township of Freehold, extending from the line of the town lots on the north side of said farm to the line of A. Brinkerhoof on the south side of said farm, by the order of G. S. Woodhull; that Woodhull mentioned to deponent that he had lie.ard that W. Lloyd, Jr., claimed part of the land whereof he gave possession. (3) of James Robeson, the surveyor, “ That he had run the line; that a deed from James Lloyd to William Lloyd, Junior, covered a strip of land between the farm of W. Lloyd and A. Brinkerhoof’s line, which was not included the mortgages to Williams, or to Woodhull, or the deed to G. S. Woodhull, of the 29th of March, 1824,” under which the-lessors of the plaintiff claimed; by a map accompanying the affidavit of the surveyor, it appeared that the 'six and a half acre lot in question was a narrow strip or gore of land lying between the lines of the Lloyd *327 and Brinkerhoof farms, beginning at the corner A (in the annexed diagram) and which was also the corner of the Lloyd and Brinkerhoof farms, and ^extending from them between the line of the Lloyd farm A B on the one side, and the Brinkerhoof farm A 0 on the other, to the Burlington road, which ran across through the points, B and 0.

*326

*327 After hearing the affidavits and argument of counsel, the court directed a rule to be entered, ordering, “ That the said rule (to shew cause) be made absolute, with costs; and that the sheriff of the said county of Monmouth, do restore the possession of the said lot to the said defendant, William Lloyd, jun., forthwith on the service of a copy of this rule,” &c.